UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                                    Criminal No. 08-219 (DSD/FLN)

    Plaintiff,

    v.                                                                **REPORT AND RECOMMENDATION**

Juan Gilberto Rosales,

    Defendant.

---

Jeffrey M. Bryan, Assistant United States Attorney, for the Government.
William M. Orth for Defendant.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on October 15, 2008 on Defendant's Motion to Suppress Statements [#14]. At the hearing, the Court received testimony from Drug Enforcement Agency ("DEA") Agents Donald Canestraro and Kevin Blackmon. The Government submitted one exhibit during the hearing.[1] The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendant's Motion to Suppress Statements [#14] be **DENIED**.

## I. FINDINGS OF FACT

**A.    Testimony of Donald Canestraro.**

Donald Canestraro testified that he has been a Group Supervisor with the DEA for three years. Canestraro testified that around 6:30 a.m. on September 17, 2008, Defendant was pulled over while driving and arrested by Special Agent ("SA") Blackmon. Canestraro testified that,

---

[1] Gov't Ex. 1 is a DEA Report of Investigation.

after the arrest, he was assigned to transport the Defendant from Albertville, Minnesota to the DEA's Minneapolis office.

Canestraro testified that Defendant initiated conversation with him as they drove to Minneapolis. Defendant asked Canestraro why he was arrested and if he could get his phone back from the law enforcement officers who arrested him. Canestraro told Defendant that when they arrived at the Minneapolis office, Defendant would have his Miranda rights read to him and then some agents might ask Defendant some questions. Canestraro then asked Defendant whether there was anything dangerous at Defendant's home that law enforcement officers should be aware of or if there were any children at the residence. The Defendant told Canestraro that there were two guns, jewelry belonging to his mother and a scale that his mother used in her jewelry business. Canestraro testified that he did not read the Defendant his Miranda rights when they were in the car. On September 18, 2008, Canestraro prepared a report regarding Defendant's statement made during the car ride. That report was admitted as Government Exhibit 1.

Conestraro testified that he did not make promises of leniency, did not confront the Defendant with evidence, and did not pressure the Defendant to do anything. He testified that he and the Defendant communicated in English and did not have trouble understanding one another.[2]

**B.    Testimony of Kevin Blackmon.**

SA Blackmon testified he has been employed as an agent with the DEA's Minneapolis

---

[2] At the close of Canestraro's testimony, Counsel for Defendant withdrew his motion with respect to the statements made by the Defendant to Canestraro during the car ride.

office for three and a half years.  He stated that he arrested the Defendant on Interstate 94 south of Albertville, Minnesota.  SA Blackmon testified that he did not read the Defendant his Miranda rights at the time of arrest.

SA Blackmon stated that he later questioned the Defendant at the DEA's Minneapolis office.  Before the questioning, SA Blackmon read the Defendant his Miranda rights.  SA Blackmon testified that he paused after he read each sentence of the warning and asked the Defendant whether he understood his rights.  Each time SA Blackmon asked the Defendant whether he understood his rights, the Defendant said yes.  After SA Blackmon read Defendant the entire Miranda warning, Defendant said that he was willing to speak without legal counsel present.  SA Blackmon testified that he did not make any promises to the Defendant regarding the outcome of the case.  SA Blackmon also testified that he did not have difficulty communicating with the Defendant.  SA Blackmon testified that the Defendant appeared to understand what was going on and did not appear under the influence of alcohol or drugs.

## II.  CONCLUSIONS OF LAW

Before any evidence obtained as a result of a custodial interrogation may be used against a defendant at trial, the Fifth Amendment requires that a defendant in custody and subject to interrogation by law enforcement agents be advised of his constitutional rights and that he make a knowing, intelligent and voluntary waiver of those rights. *Miranda v. Arizona*, 84 U.S. 436, 444 (1966).  Suspects need to be informed of these *Miranda* rights before questioning begins. *Id.* at 469-70.  Statements elicited from a suspect in violation of *Miranda* are inadmissible. *Stansbury v. California*, 511 U.S. 318, 322 (1994).

After being informed of their *Miranda* rights, a suspect's waiver of their Fifth

Amendment privilege against self-incrimination is only valid if it is voluntarily, knowingly, and intelligently made.  *Id.* at 444; *United States v. Syslo*, 303 F.3d 860, 866 (8th Cir. 2002).  A waiver is knowing if it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  It is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception."  *Id*.  It is the Government's burden to show by a preponderance of evidence that the suspect's waiver meets these standards.  *Miranda*, 384 U.S. at 473; *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

The Government has shown by a preponderance of the evidence that the Defendant voluntarily and knowingly waived his Miranda rights.  When the Defendant was read his rights at the Minneapolis office of the DEA, he was in custody for purposes of Miranda.  SA Blackmon testified that before he started questioning, he read the Defendant his Miranda rights slowly, stopping after each sentence to ask whether the Defendant understood what Blackmon was saying.  SA Blackmon testified that, in response to each question, the Defendant said he understood his rights.  SA Blackmon testified that after he finished reading the Miranda warning, the Defendant stated that he was willing to speak without a lawyer present.  SA Blackmon also testified he did not pressure the Defendant in any way; he did not have trouble communicating with Defendant; and the Defendant did not appear to be under the influence of alcohol or drugs.

### III.  RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Statements [#14] be **DENIED**.

DATED: October 22, 2008               s/ *Franklin L. Noel*
                                      FRANKLIN L. NOEL
                                      United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **November 7, 2008**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **November 7, 2008,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.